**Petition for Writ of Mandamus Conditionally Granted and Majority and Concurring Opinions filed January 12, 2018.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00639-CV

## IN RE GRECON, INC., Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-26100**

## MAJORITY OPINION

The issue presented in this original proceeding is whether settlement agreements between the plaintiff and settling defendants are relevant and discoverable before trial. After real party in interest Ralph Figgs refused to produce the settlement agreements, relator GreCon, Inc. moved to compel Figgs to produce them. The trial court denied the motion. GreCon asks this court to grant mandamus

relief compelling the Honorable Michael Gomez, presiding judge of the 129th District Court of Harris County, to vacate the order denying GreCon's motion to compel and to sign an order compelling Figgs to supplement his disclosure responses and produce the settlement agreements.[1] We conditionally grant this mandamus relief, though the grounds for conditionally granting relief divide the panel. Justices Boyce and Jewell conclude that mandamus should conditionally issue for the reasons stated in section I, whereas Chief Justice Frost and Justice Jewell conclude mandamus should conditionally issue for the reasons stated in section II.

### BACKGROUND

Figgs suffered injuries during a fire at a plywood manufacturing plant owned by Georgia Pacific South. Seeking recovery for his injuries, Figgs sued GreCon, asserting claims for negligence, gross negligence, strict liability, and breach of express and implied warranties in connection with the sale, installation, and maintenance of the detection, prevention, and suppression systems, which Figgs claims failed to prevent, warn, or eliminate hazards that caused the explosion. Figgs also sued a number of other defendants.

Figgs settled with defendants Georgia Pacific LLC, Georgia Pacific Building Products, LLC, Georgia Pacific Wood Products LLC, Georgia Pacific Wood Products South LLC, Georgia Pacific Equity Holdings LLC, International Paper Company, and Mid-South Engineering, Inc. (collectively the "Settling Parties"). Under Rule of Civil Procedure 194.2, GreCon requested disclosure from Figgs of

---

[1] *See* Tex. Gov't Code Ann. § 22.221 (West Supp. 2017); *see also* Tex. R. App. P. 52.

2

"any settlement agreements described in Rule 192.3(g)." Tex. R. Civ. P. 194.2(h). Rule 192.3(g) provides that "[a] party may obtain discovery of the existence and contents of any relevant portions of a settlement agreement." Tex. R. Civ. P. 192.3(g). When Figgs refused to produce any of his settlement agreements with one or more of the Settling Parties (collectively the "Settlement Agreements"), GreCon filed its motion to compel Figgs to supplement his response to the request for disclosure under Rule 194.2(h) and to produce copies of all the Settlement Agreements.

The trial court held a hearing on June 12, 2017, and a few months later denied GreCon's motion to compel the Settlement Agreements, stating the following:

> After having conducted an in camera review of the proffered settlement agreements, and after considering the motions, responses, and arguments of counsel, the Court is of the opinion that the motions should be DENIED, at this time.
>
> **IT IS THEREFORE, ORDERED AND ADJUDGED** that Defendant GreCon's (and all other Defendants') Motions to Compel Settlement Agreements are hereby **DENIED**, at this time.

The trial further stated in a footnote in the order that "Defendants may be entitled to the settlement agreements at trial and may re-urge the same at that time."

In this mandamus proceeding, GreCon asserts that the Settlement Agreements are relevant because GreCon needs them to: (1) prove up its entitlement to settlement credits; (2) evaluate any potential witness bias; and (3) evaluate GreCon's potential exposure before trial. GreCon asks this court to grant mandamus relief compelling the respondent to vacate his order denying GreCon's motion to compel and to sign

3

an order compelling Figgs to supplement his disclosure responses and produce the Settlement Agreements.[2]

## MANDAMUS STANDARD OF REVIEW

Generally, to be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The relator may not have an adequate remedy by appeal when the trial court has not allowed discovery because such discovery cannot be made part of the appellate record, and because the reviewing court is not able to evaluate the effect of the trial court's error on the record before it. *Walker v. Packer*, 827 S.W.2d 833, 843−44 (Tex. 1992) (orig. proceeding).

---

[2] GreCon filed its original mandamus petition before the trial court ruled on its motion to compel. In the original mandamus petition, GreCon asked this court to order the respondent to rule on GreCon's motion to compel. After the trial court denied the motion to compel, GreCon supplemented its mandamus petition to add a request for mandamus relief compelling the respondent to vacate his order denying GreCon's motion to compel and to sign an order compelling Figgs to supplement his disclosure responses and produce the settlement agreements. The relief requested in the original petition is moot, and in this opinion, we address only the relief GreCon requested in the supplement to its mandamus petition.

## I.     Relevance and the Burden of Proof

We first consider the relevant burden of proof in the context of requests for disclosure, an issue the parties disputed in the trial court and dispute in our court.

Added to the discovery rules in 1999, Rule 194, entitled "Request for Disclosure," provides the mechanism for requesting the disclosure of certain information in litigation:

> A party may obtain disclosure from another party of the information or material listed in Rule 194.2 by serving the other party—no later than 30 days before the end of any applicable discovery period—the following request: "Pursuant to Rule 194, you are requested to disclose, within 30 days of service of this request, the information or material described in Rule [state rule, e.g., 194.2, or 194.2(a), (c), and (f), or 194.2(d)–(g)]."

Tex. R. Civ. P. 194.1.  Among the information or material for which a party may request disclosure is "any settlement agreements described in Rule 192.3(g)."  Tex. R. Civ. P. 194.2(h).

Rule 192.3 addresses the scope of discovery.  *See* Tex. R. Civ. P. 192.3. Specifically, Rule 192.3(g) provides that "[a] party may obtain discovery of the existence and contents of any relevant portions of a settlement agreement."  Tex. R. Civ. P. 192.3(g).

As to the response to the request for disclosure, Rule 194.3 provides that "[t]he responding party must serve a written response on the requesting party within 30

days after service of the request[.]" Tex. R. Civ. P. 194.3.[3] Under Rule 194.4, the responding party "ordinarily must" serve documents and other tangible items with the response, and "must produce the documents at the time and place stated, unless otherwise agreed by the parties ordered by the court[.]" Tex. R. Civ. P. 194.4. No objection is permitted to a request for disclosure. Tex. R. Civ. P. 194.5; *see also In re Univar USA, Inc.*, 311 S.W.3d 175, 180 (Tex. App.—Beaumont 2010, orig. proceeding).

Comment 1 to Rule 194 explains the purpose of the disclosure rule:

> 1.      Disclosure is designed to afford parties basic discovery of specific categories of information, not automatically in every case, but upon request, without preparation of a lengthy inquiry, and without objection or assertion of work product. In those extremely rare cases when information ordinarily discoverable should be protected, such as when revealing a person's residence might result in harm to the person, a party may move for protection. A party may assert any applicable privileges other than work product using the procedures of Rule 193.3 applicable to other written discovery. Otherwise, to fail to respond fully to a request for disclosure would be an abuse of the discovery process.

Tex. R. Civ. P. 194 cmt. 1.

This method is intended to streamline the discovery process as to the matters covered by requests for disclosure. In those "extremely rare cases" when settlement agreements ordinarily covered by the mandatory disclosure rule ought to be withheld, the responding party may file a motion for protection. *See id.*; Tex. R.

---

[3] Rule 194.3 provides certain exceptions, which are not applicable here. Tex. R. Civ. P. 194.3.

Civ. P. 192.6 (explaining procedure to obtain "an order protecting that person from the discovery sought"). Such a motion is generally required to be filed before the deadline to respond to the discovery request. Tex. R. Civ. P. 192.6(a) (person affected by discovery request may move for protection "within the time permitted for response to the discovery request."). If a party does not move for protection or assert any applicable privileges by the thirty-day deadline for responding to the request, a failure to "respond fully" to a request for disclosure is considered an "abuse of the discovery process." Tex. R. Civ. P. 194 cmt. 1.[4]

GreCon is one of several defendants in Figgs's lawsuit, which alleges various tort claims arising out of an explosion. Figgs signed a settlement agreement with defendants International Paper Company, Georgia-Pacific LLC, Georgia-Pacific Building Products LLC, Georgia-Pacific Equity Holdings LLC, Georgia-Pacific Wood Products LLC, and Georgia-Pacific Wood Products South LLC (among other Georgia-Pacific entities) on February 22, 2017. Figgs also settled with Mid-South Engineering Company in a separate agreement, but our copy of that settlement agreement is not dated.[5] According to GreCon, it learned of at least the International

---

[4] The comments to the disclosure rule are intended to inform its construction and application. *See* Order of November 9, 1998; *see generally Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that the comment to Tex. R. Civ. P. 166a(i) was specifically intended to inform the construction and application of the rule).

[5] Figgs has represented that he submitted for *in camera* inspection copies of two settlement agreements. We presume for the purposes of our analysis that the two documents submitted under seal in this case for *in camera* review reflect the contents of the two settlement agreements, even though the Mid-South Engineering document is not signed by any party and the other document is signed only by Ralph and Angela Figgs.

7

Paper and Georgia-Pacific entities settlements in early March 2017. GreCon served Figgs with requests for disclosure on March 3, which included a request under Rule 194.2(h) for "settlement agreements described in Rule 192.3(g)." Three days later, on March 6, Figgs filed a non-suit of the International Paper and Georgia-Pacific entities without disclosing that a settlement had occurred. Figgs's responses to GreCon's requests for disclosure were due April 3. Figgs timely served a response, which stated as to "discoverable settlement agreements," "none at this time." By April 3, Figgs did not file a motion for protection (or any other motion) arguing that any portion of the undisclosed Settlement Agreements ought to be withheld from production on relevancy or other grounds.

GreCon filed a motion to compel, to which Figgs responded. In the relevant documents, GreCon argued that Settlement Agreements existed, they were relevant and discoverable, and they were past due because the mandatory thirty-day deadline for production had expired and Figgs had not disclosed the agreements. GreCon argued in its motion to compel that the Settlement Agreements were discoverable under Rule 194.2(h) and that Figgs had failed to supplement his disclosure responses. In Figgs's response, filed June 9, 2017, he argued that it was GreCon's burden to prove the Settlement Agreements' relevance. In reply, GreCon urged that it was Figgs's burden to prove that any portion of the Settlement Agreements ought to be withheld from disclosure.

The existence and contents of relevant portions of settlement agreements are presumptively discoverable. *See* Tex. R. Civ. P. 192.3(g). We agree with GreCon that the burden of proof regarding relevance, or lack thereof, generally rests on the

party resisting discovery.  *See, e.g., Univar*, 311 S.W.3d at 180 (citing *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991)); *In re Frank A. Smith Sales, Inc.*, 32 S.W.3d 871, 874 (Tex. App.—Corpus Christi 2000, orig. proceeding) ("Generally, the party resisting discovery has the burden to plead and prove the basis of its objection."); *In re Continental Ins. Co.*, 994 S.W.2d 423, 428 (Tex. App.—Waco 1999, orig. proceeding) (party resisting discovery of settlement agreement had burden to show agreement not relevant); *Valley Forge Ins. Co. v. Jones*, 733 S.W.2d 319, 321 (Tex. App.—Texarkana 1987, orig. proceeding).  It is logical to place the burden on the party resisting discovery because a settling party has a copy of the settlement agreement and is in the best position to demonstrate why any portions are irrelevant.  *See In re Continental*, 994 S.W.2d at 428.

Additionally, civil litigants must plead and prove their entitlement to protection from discovery in a timely fashion.  *See* Tex. R. Civ. P. 192.6, 193.2, 193.3, 193.4; *In re Gore*, 251 S.W.3d 696, 700 (Tex. App.—San Antonio 2007, orig. proceeding).  As mentioned, motions for protection are generally required to be filed before the deadline to respond to the discovery request.  Tex. R. Civ. P. 192.6(a) (person affected by discovery request may move for protection "within the time permitted for response to the discovery request").

Figgs did not meet his burden of proof because he did not timely or properly assert his relevancy arguments for two reasons.  First, Figgs did not file a motion for protection.  Figgs's first filing challenging the relevance of the Settlement Agreements was his response to GreCon's motion to compel.  Even construing Figgs's response as a motion for protection, it came too late because it was filed after

9

the April 3, 2017 disclosure deadline. The deadline to fully respond to the disclosure requests having passed, any attempt by Figgs to meet his burden in the response to the motion to compel was moot. Figgs did not invoke the protections available under rule 192.6. *See In re Morse*, 153 S.W.3d 578, 582 (Tex. App.—Amarillo 2004, orig. proceeding) (party's failure to fully respond to request for disclosure or move for protection constituted abuse of discovery process). Thus, Figgs's arguments asserted for the first time in response to GreCon's motion to compel were insufficient to establish that any portion of the Settlement Agreements— "information ordinarily discoverable"—should be protected from disclosure on relevancy grounds. *See* Tex. R. Civ. P. 194, 194.5.

Second, Figgs's response to the request for disclosure, though timely, also did not advance his burden of proof. He responded that no "discoverable" settlement agreements existed. Although, as discussed *infra* in Section II, Figgs's argument against disclosure focuses on the relevance of the settlement *amounts*, other aspects of the Settlement Agreements were unquestionably relevant and discoverable at the time Figgs served his response to the requests for disclosure. *See White v. Zhou Pei*, 452 S.W.3d 527, 548 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Settlement agreements are generally discoverable, and not just once a settlement credit is deemed to apply."). These include, at a minimum, the identity of all settling parties and the scope of the claims released. In GreCon's answer, it pleaded comparative fault and proportionate responsibility under Texas Civil Practice and Remedies Code chapter 33. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (West 2015). GreCon also pleaded its right to credits or offsets resulting from settlements with co-

10

defendants. *See id.* §§ 33.012, 33.013 (West 2105). Given those pleadings, GreCon was entitled to know the identity of all settling parties because the court is required to include a jury submission in the charge as to settling persons, assuming the evidence supports it. *See id*. § 33.003(a)(3). GreCon has a right to know that information before trial. It was due thirty days after the requests for disclosure were served, absent a motion for protection, which Figgs did not file. Figgs has not contested this point yet he nonetheless failed to disclose even the existence of the Settlement Agreements when he served his timely response. Accordingly, Figgs's disclosure response, which disclosed no portion of the Settlement Agreements and stated that no "discoverable" settlement agreements existed as of April 3, was misleading and an abuse of the discovery process. *See* Tex. R. Civ. P. 194 cmt. 1; *Morse*, 153 S.W.3d at 581.

Rule 194 does not contain any exceptions for settlement agreements other than the motion for protection procedure. If it were true, as Figgs argues, that settlement agreements were not relevant "before trial," then the rules would not require their disclosure thirty days following a valid request, and Rule 193.5 would not require their supplementation thirty days before trial. Tex. R. Civ. P. 193.5. The burden was on Figgs to show why the Settlement Agreements should not be disclosed, and to make that showing by the deadline to respond to the requests for disclosure. Because Figgs did not meet his burden to demonstrate by the applicable deadline that any portion of the Settlement Agreements should be withheld from disclosure, GreCon was entitled to full and unredacted disclosure of all Settlement Agreements

on or before April 3, 2017. The trial court's refusal to compel production of the Settlement Agreements was a clear abuse of discretion.

## II.    The Settlement Agreements Are Relevant and Discoverable Before Trial

GreCon contends that the Settlement Agreements are relevant: (1) for determining settlement credits; (2) evaluating whether any witness at trial will be biased against GreCon; and (3) determining GreCon's potential exposure and evaluating its trial strategy.

## A.    Determination of Settlement Credits

GreCon asserts that the Settlement Agreements are discoverable for the purpose of determining settlement credits. A prevailing party is entitled to only "one satisfaction" for an injury. *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993). "[W]hen a plaintiff files suit alleging that multiple tortfeasors are responsible for the plaintiff's injury, any settlements are to be credited against the amount for which the liable parties as a whole are found responsible, but which only the non-settling defendant remains in court." *Id.* "[T]he plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendants has already partially contributed." *Id.* "[I]f settling parties are partially responsible for such an injury, then as a matter of law the judgment should be reduced by the amount of any settlements so as to prevent double recovery by the prevailing plaintiff." *Id.*

The reduction of the plaintiff's recovery may be achieved by settlement credits under Chapter 33 of the Texas Civil Practice and Remedies Code. *Bus.*

*Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 752 (Tex. App.—San Antonio 2012, no pet.). Under section 33.012(b), "[i]f the claimant has settled with one or more persons, the [trial] court shall . . . reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." Tex. Civ. Prac. & Rem. Code Ann. § 33.012.

The defendant shoulders the burden to prove its right to a settlement credit, including the amount of the settlement credit. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). Thus, settlement agreements containing the dollar amount exchanged are relevant to the remaining defendants for the purpose of determining the amount of the settlement credit.

Figgs acknowledges that the settlement amounts may become relevant after trial for calculating settlement credits in the event he prevails, but Figgs argues that, notwithstanding the request for disclosure, he does not have to disclose portions of Settlement Agreements concerning settlement amounts before trial because they are not relevant before trial. Figgs relies on two pre-Rule 194 cases. *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643 (Tex. 1995) (orig. proceeding); *Palo Duro Pipeline Co. v. Cochran*, 785 S.W.2d 455 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding).

In *Leggat*, the decedent's estate and survivors sued Ford for products liability after the decedent's Bronco II flipped and rolled over, killing him. 904 S.W.2d at 645. The trial court ordered Ford to produce the amounts Ford had paid in every Bronco II roll-over settlement. *Id.*

13

The Supreme Court of Texas stated that settlement agreements are discoverable to the extent they are relevant. *Id.* at 649 (citing former Tex. R. Civ. P. 166b(2)(a), 166b(2)(f)(2)). Settlement credits were not at issue in *Leggat*. Instead, the plaintiffs wanted the information to evaluate the case for trial and for facilitating settlement. The court held that crafting a settlement strategy is not a purpose of discovery, and "specifically disapprove[d] of the request for the information under these circumstances." *Id.*

Figgs also relies on an opinion from this court, in which the real parties in interest sued the relators, intrastate natural gas pipelines companies, for damages for breach of a "take or pay" purchase contract, tortious interference with the contract, conversion, and drainage of a common reservoir. *Palo Duro Pipeline Co.*, 785 S.W.2d at 456. The trial court ordered the relators to produce all settlement agreements in all other take-or-pay litigation involving the relators. *Id.*

Quoting former Texas Rule of Civil Procedure 166b(2)(f)(2), which provided that "'[a] party may obtain discovery of the existence and contents of any settlement agreement,'" the court explained that, "[i]n the context of material relevant to a claim or defense, Rule 166b(2)(f)(2) provides for the discovery of settlement agreements, with no specific wording of limitation." *Id.* at 457. Still, the court noted that "[t]he litmus test for discoverability is relevancy." *Id.*

The real parties in interest alleged the relators had conspired to take more gas from larger producers to the detriment of smaller producers. *Id.* To the extent that the settlement agreements contained evidence of the amount of gas the relators had agreed to take from the larger producers under the settlement terms, we held that,

14

under the specific and limited facts of the case, the settlement agreements met the relevancy test with regard to the alleged conspiracy. *Id.*

As to the cash amounts contained in the settlement agreements, we held such information was not relevant to the issue of conspiracy. *Id.* As with *Leggat*, settlement credits were not at issue in *Palo Duro*.

Figgs asserts that the general scope of discovery remained substantively unchanged after the 1999 amendments to the Texas Rules of Civil Procedure. Former Rule 166b(2)(a) provided with regard to scope of discovery:

> Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence.

Tex. R. Civ. P. 166b(2)(a) (repealed). Current Rule 192.3(a) similarly states:

> In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Tex. R. Civ. P. 192.3(a).

Thus, Figgs asserts that the standard for relevance did not change with the 1999 amendments. Figgs further contends that a reading of former Rule 166b(2)(2) suggests that settlement agreements were discoverable without limitation:

15

A party may obtain discovery of the . . . existence and contents of any settlement agreement. Information concerning the settlement agreement is not by reason of disclosure admissible in evidence at trial.

Tex. R. Civ. P. 166b(2)(2) (repealed). The current Rule 192.3(g) limits discovery of settlement agreements to "any relevant portions of a settlement agreement." Tex. R. Civ. P. 192.3(g). Figgs posits that Rule 192.3(g) essentially codifies the holdings in *Ford* and *Palo Duro*.

Figgs points to *In re BDPJ Houston, LLC*, in which this court applied the 1999 amended rules, and contends we followed *Leggat* and *Palo Duro*. *See* 420 S.W.3d 309 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding). In *BDPJ Houston*, the trial court ordered the production of documents in response to requests for production, which evidenced the location, amount, and expenditure of settlement funds, but not the settlement agreement itself. *Id.* at 312. In the mandamus proceeding that followed, this court reviewed the record to determine whether the discovery was relevant to a claim or defense in the underlying suit or whether it was reasonably calculated to lead to the discovery of admissible evidence. *Id.* The court held that the trial court abused its discretion by compelling discovery that was neither relevant to a claim or defense in the underlying case, nor reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 314. We cited *Palo Duro* for the proposition that cash amounts were not relevant to the claims and were not reasonably calculated to lead to the discovery of admissible evidence. *BDPJ Houston*, however, did not involve settlement credits. *See id.* at 311–14.

We do not agree with Figgs's argument that settlement agreements are not relevant until after the plaintiff prevails at trial. The cases on which Figgs relies did

16

not involve the determination of settlement credits. *See Frank A. Smith Sales*, 32 S.W.3d at 875 (observing that the parties seeking discovery in *Leggat* and *Palo Duro* did not assert that the settlement agreements were relevant under the common law "one satisfaction" rule). Rule 194.3 does not state that settlement agreements are relevant on the condition that the nonsettling defendant is entitled to a credit, *i.e.*, the jury has returned a verdict and determined the plaintiff's damages. *Univar,* 311 S.W.3d at 179–80. Instead, after service of a request for disclosure under Rule 194.2(h), a party must disclose the existence and contents of any relevant portions of a settlement agreement. *See* Tex. R. Civ. P. 192. 3(g), 194.2(h), 194.3.

As to Figgs's contention that only the "amounts" of the settlements may become relevant if he prevails at trial, producing the "amounts" rather than the agreements would preclude GreCon from verifying the accuracy of the amounts. *See Univar*, 311 S.W.3d at 181. Likewise, it would preclude judicial oversight of any dispute between the parties concerning the proper amount of any settlement credit. *Id.* Therefore, the contents of any relevant portions of a settlement agreement, not just settlement "amounts," must be produced before trial in response to a request for disclosure under Rule 194.2(h). We conclude that all portions of the Settlement Agreements are relevant to determining settlement credits and that GreCon is entitled to obtain a copy of all portions of the Settlement Agreements. *See* Tex. R. Civ. P. 192.3 (g), 194.2(h), 194.3.

## B.     Demonstration of Witness Bias or Prejudice

GreCon further contends that it is entitled to the Settlement Agreements to demonstrate bias or prejudice of a party or witness, or to establish the existence of a promise or agreement made by nonparties to the settled suit.

"[S]ettlement agreements and offers may be discoverable for purposes other than to establish liability, such as to demonstrate bias or prejudice of a party or witness, or, to establish the existence of a promise or agreement made by nonparties to the settled lawsuit." *Univar*, 311 S.W.3d at 182. Not producing settlement agreements prevents the nonsettling defendant the opportunity to examine the contents of the settlement agreements, thereby depriving the nonsettling defendant the opportunity to evaluate whether some portions of the settlement agreements demonstrate the presence of bias. *Id.* If the agreements contain provisions that affect the testimony of the trial witnesses, the order denying production will prevent the nonsettling defendant from using the settlement agreements during trial. *Id.* "[B]y neither having the agreements in the record nor having them to utilize in examining the witnesses at trial, the nonsettling defendant is restricted of its subsequent ability to demonstrate on appeal that it did not receive a fair trial." *Id.*

Whether witness bias or prejudice exists as a result of Figgs's settlement with Georgia-Pacific and Mid-South Engineering is relevant to GreCon's defenses and strategy at trial. GreCon asserts that if it cannot examine all provisions in the Settlement Agreements, it will not be able to evaluate whether any provision exists that might influence a witness to testify more favorably for Figgs.

We examined *in camera* the Settlement Agreements submitted by Figgs under seal. We do not find any provision that would show an agreement to cooperate between Figgs and the settling defendants. Still, GreCon should have the opportunity to examine the Settlement Agreements to determine whether they contain anything that would raise issues of witness bias or prejudice. *See Burlington N., Inc. v. Hyde*, 799 S.W.2d 477, 480–81 (Tex. App.—El Paso 1990, orig. proceeding) (explaining, with respect to contention that settlement agreement may contain or lead to a Mary Carter agreement, that "[a]lthough our inspection of the document reveals nothing of the kind, we conclude that Hartman should have the opportunity to examine the agreement to determine for himself whether there is any relevant, admissible material or information that might lead to the discovery of admissible evidence"); *Nermyr v. Hyde*, 799 S.W.2d 472, 476 (Tex. App.—El Paso 1990, orig. proceeding) (same); *see also In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 WL 5019947, at *12 (Tex. App.—Corpus Christ Oct. 7, 2014, orig. proceeding) (mem. op.) (holding that portions of settlement agreement concerning the existence of potential witness bias were reasonably calculated to lead to the discovery of relevant impeachment or bias evidence). We conclude that all portions of the Settlement Agreements are relevant to determining the existence of witness bias or prejudice and that GreCon is entitled to obtain a copy of all portions of the Settlement Agreements. *See* Tex. R. Civ. P. 192.3 (g), 194.2(h), 194.3.

**C.    Evaluation of Potential Exposure and Engagement in Settlement Negotiations**

GreCon contends that the Settlement Agreements are relevant for evaluating exposure and for engaging in meaningful settlement negotiations.  Figgs asserts that the Supreme Court and this court already have rejected this argument.  *See Leggat*, 904 S.W.2d at 649 (holding that discovery of settlement amounts between Ford and other claimants "to determine a settlement strategy for their own case" was "not a proper purpose of discovery," and "specifically disapproved of the request for the information under these circumstances"); *Palo Duro*, 785 S.W.2d at 457 ("Admittedly, the cash amounts might be of interest to the parties here as a comparative bargaining tool for their settlement purpose, but such an interest does not, in our opinion, satisfy the relevancy test for discovery.").

We do not read *Leggat* to definitively preclude discovery of settlement agreements when the requesting party desires the agreements, among other reasons, for creating a settlement strategy.  The court emphasized that it "should not be interpreted to mean that the amount of a settlement could never be relevant, only that the [plaintiffs] have offered no explanation of how such information is relevant to their claims in this case." *Leggat*, 904 S.W.2d at 649.  Moreover, in *Leggat*, the plaintiffs sought discovery of the amount Ford paid to settle every Bronco II roll-over claim.  In today's mandamus proceeding, the Settlement Agreements at issue only include settlements with parties to this suit, not settlement agreements in unrelated cases.

A nonsettling defendant should be entitled to make its own independent assessment of its settlement credits to evaluate a settlement offer to avoid trial. *Univar*, 311 S.W.3d at 181. "Because the sole source of a nonsettling defendant's knowledge about its settlement credits is based on what a party with an incentive to minimize that amount tells the nonsettling defendant, without being given the opportunity to verify that information, a nonsettling defendant might be pressured into settling." *Id.* "Such a settlement, procured by darkness, is neither just, fair, equitable, or impartial, and appears to be inconsistent with the objective of the Texas Rules of Civil Procedure." *Id.*

An improper motive in seeking a settlement agreement is not relevant in deciding whether settlement agreements should be produced if there are other valid bases for producing the agreements. *See Frank A. Smith Sales*, 32 S.W.3d at 875. Even if seeking settlement agreements for the purpose of determining GreCon's exposure, standing alone, does not meet the test for relevancy, all portions of the Settlement Agreements are relevant to the determination of settlement credits and the existence of witness bias or prejudice.

## D.     Abuse of Discretion

At the very least, all portions of the Settlement Agreements are relevant to determining settlement credits and the existence of witness bias or prejudice, and GreCon is entitled to obtain a copy of all portions of the Settlement Agreements before trial.[6] *See* Tex. R. Civ. P. 192.3 (g), 194.2(h), 194.3. Therefore, we hold that

_____

[6] *See* Tex. R. Civ. P. 194.2(h), 194.3, 194.4; *see also In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding) ("[M]odern discovery and pretrial procedures

21

the trial court abused its discretion by denying GreCon's motion to compel Figgs to supplement his response to the request for disclosure under Rule 194.2(h) and to produce all portions of the Settlement Agreements.

## NO ADEQUATE REMEDY BY APPEAL

Having concluded that the trial court abused its discretion by denying GreCon's motion to compel, we now address whether GreCon has an adequate remedy by appeal. A relator may not have an adequate remedy by appeal if the trial court prohibits discovery, such discovery cannot be made part of the appellate record, and the appellate court cannot evaluate the effect of the trial court's error based on the record. *Walker*, 827 S.W.2d at 843−44. The appellate court must consider all relevant circumstances, including the claims and defense asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate. *Id.* at 844.

The Settlement Agreements are relevant to the determination of any potential settlement credits. Figgs acknowledges that settlement "amounts" may become relevant after trial and only if GreCon prevails. Yet, if the Settlement Agreements are not part of the record, their absence will frustrate GreCon's ability to have adequate appellate review of a claim that the trial court failed to give the proper

---

serve the useful purpose of '[making] a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958))); *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding), *disapproved on other grounds by Walker*, 827 S.W.2d at 842 (stating that the purpose of discovery is "to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed").

settlement credit. *See Univar*, 311 S.W.3d at 181. GreCon also seeks to determine the existence of any potential witness bias or prejudice. Without access to the Settlement Agreements, GreCon will lose the ability to effectively evaluate the existence of any potential bias or prejudice before trial and to use the agreements at trial. We hold that GreCon does not have an adequate remedy by appeal.

## CONCLUSION

Having determined that the trial court abused its discretion by denying GreCon's motion to compel Figgs to supplement his response to the request for disclosure under Rule 194.2(h) and to produce all portions of the Settlement Agreements, and that GreCon lacks an adequate remedy by appeal, we conditionally grant the mandamus relief requested by GreCon. We direct the trial court to (1) vacate its August 22, 2017 order denying GreCon's Motion to Compel, and (2) order Figgs to supplement his response to the request for disclosure under Rule 194.2(h) and to produce all portions of the Settlement Agreements. The writ will issue only if the trial court fails to act in accordance with this opinion.

/s/     Kevin Jewell
        Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jewell. (Frost, C.J., concurring) (Boyce, J., joining section I of the majority opinion).

23